

KNO: USAO 2012R00560

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | **GLR** |
| v. | * | CRIMINAL NO. **12 CR 0593** |
| | * | |
| CORA CARPER, | * | (Embezzlement from a Labor Union, |
| | * | 29 U.S.C. § 501(c); Forfeiture, 18 U.S.C. |
| Defendant | * | § 981(a)(1)(C); 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INDICTMENT

### COUNTS ONE THROUGH SIX

The Grand Jury for the District of Maryland charges that:

### Individuals and Entities

At all times relevant to this Indictment:

1. The International Association of Heat and Frost Insulators and Allied Workers ("Insulators"), headquartered in Lanham, Maryland, was a labor organization engaged in an industry affecting commerce within the meaning of Sections 402(i) and (j) of Title 29, United States Code. The Insulators was an international labor union and represented approximately 21,700 members, who worked in the insulation industry in the United States and Canada. Insulators members paid dues to their local unions, which sent portions of the money collected to the international union.

2. Defendant **CORA CARPER ("CARPER")** was hired by the Insulators as a receptionist in late 2001 or early 2002.

3. Prior to June 2009, **CARPER** took over as the Insulators' Political Action Committee ("PAC") fund manager. The PAC fund manager entered PAC fund receipts and

deposits into a computerized ledger, made deposits into the PAC fund, filled out payment request forms, printed checks for disbursements from the PAC fund, and then received and reconciled monthly PAC fund bank statements against the electronic ledger. All checks that were printed by the PAC fund manager already included electronic signatures from the president and treasurer.

## PAC Fund

4. The Insulators maintained a PAC fund, which was funded by voluntary contributions of Insulators' members. The PAC fund was used solely for political contributions and legal and filing fees associated with the PAC. The PAC fund was not used for any general operating expenses, travel expenses, or petty cash, and no expenses chargeable to the PAC fund were permitted to be paid in cash. All PAC fund activity was documented in a computerized file that included the name, date, purpose, and check number for each receipt to and disbursement from the PAC fund.

5. In order to facilitate the purposes of the PAC fund, the Insulators maintained a PAC fund bank account. The only authorized signatories on the PAC fund bank account were the Insulators' president and treasurer. All legitimate expenses from the PAC fund were paid by checks drawn on the PAC fund bank account.

6. Only the Insulators' president, treasurer, PAC fund director, or local officers had authority to request payments from the PAC fund. When an authorized official made a request, the request was submitted to the PAC fund manager. The PAC fund manager then completed a request form and submitted it to Insulators' international officers for approval. The PAC fund manager did not have authority to issue any checks from the PAC fund that did not have an

associated request form that indicated the payee, purpose, and delivery method of the requested check.

### The Embezzlement Scheme

7. From at least in or about June 2009 through in or about February 2011, **CARPER** wrote more than 300 checks to cash from the Insulators' PAC fund bank account totaling approximately $502,586 for her personal use. **CARPER** never received any requests for checks to cash from Insulators' officers who had authority to make check requests, and did not have authorization to create and print these checks and did not complete request forms for any of the checks.

8. In furtherance of the scheme, **CARPER** also made false entries in the memo lines of some of the checks and in the electronic ledger. After writing the checks, **CARPER** took those checks to the local branch of the bank handling many of the Insulators' accounts – the same branch where she made legitimate deposits into the PAC fund account. **CARPER** also signed the back of the checks made out to cash underneath where she placed the signature of the Insulators' treasurer. After receiving the cash from the PAC fund, **CARPER** made numerous cash deposits into her personal bank accounts.

### The Charges

9. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**CORA CARPER,**

did embezzle, steal, and unlawfully and willfully abstract and convert to her own use, and the use of another, any of the moneys, funds, securities, property, and other assets of the Insulators, a

labor organization engaged in an industry affecting commerce, by which she was employed, directly and indirectly; described below for each count, each act of embezzlement constituting a separate count:

| COUNT | DATE | EMBEZZLEMENT |
|---|---|---|
| 1 | October 26, 2009 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $1,400 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |
| 2 | January 21, 2010 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $400 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |
| 3 | July 6, 2010 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $4,200 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |
| 4 | October 25, 2010 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $3,800 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |
| 5 | December 10, 2010 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $1,800 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |
| 6 | January 3, 2011 | Defendant **CARPER** embezzled, stole, and unlawfully and willfully abstracted and converted to her own use $2,500 of Insulators' money by writing a check to cash from the Insulators' PAC fund bank account. |

29 U.S.C. § 501(c)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further charges that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under this Indictment.

2. As a result of the offenses set forth in Counts One through Six of this Indictment, the defendant,

**CORA CARPER,**

shall forfeit to the United States of America all property, real and personal, (a) which was used or intended to be used to commit the offense, or (b) which constitutes and is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, a sum of money equal to the value of the proceeds of the charged offense, which amount is at least $502,586.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

*Rod J. Rosenstein / KB*
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED
Foreperson

Date: 11-14-12